IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TERENCE SASAKI,<br><br>        Plaintiff,<br><br>    v.<br><br>MARK S. INCH, *et al.*,<br><br>        Defendants. | Case No. 18-cv-00270-DKW-KJM<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; (2) DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND; AND (3) RULING ON VARIOUS MOTIONS FOR RELIEF.[1]** |

On July 9, 2018, Plaintiff Terence Sasaki, while still a prisoner and proceeding pro se, filed a 27-page Complaint against 160 named and unnamed individuals with whom he has allegedly crossed paths during his time under federal incarceration. Dkt. No. 1. Sasaki also filed an application to proceed *in forma pauperis* by a prisoner (the "Prisoner IFP Application") and a motion for appointment of counsel. Dkt. Nos. 3, 4. After the Prisoner IFP Application was granted and the motion for appointment of counsel was denied, Dkt. Nos. 8-9, Sasaki moved for leave to revise his Complaint, Dkt. No. 10. Sasaki asserted that the Complaint was "less than well organized" and asked for at least 90 days to revise it.

---

[1]Pursuant to Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

On July 30, 2018, this Court granted Sasaki an extension of time to file an amended complaint.   Dkt. No. 11.   In doing so, although the Court had not screened the Complaint, the Court reminded Sasaki of numerous basic principles, including, (1) the ability to join only claims arising out of the same series of transactions or occurrences, (2) venue being proper in this District only under certain circumstances, (3) while exhaustion is an affirmative defense, a complaint may be subject to dismissal when the defense appears plainly on its face, and (4) the Court not being a repository for Sasaki's purported evidence.   Subsequently, the time for Sasaki to file an amended complaint was extended further until November 16, 2018.   Dkt. No. 21.

Although not officially docketed until November 28, 2018, on November 16, 2018, Sasaki filed a First Amended Complaint (FAC). [2]   Dkt. No. 23.[3]   The FAC is a substantial amendment of the Complaint, demonstrated, in part, by the fact that the FAC (excluding evidence submitted therewith) has more than quadrupled to

---

[2]As will soon be seen, there was a very good reason why the FAC was not docketed immediately: the sheer size of the hand-delivered FAC and the evidence Sasaki submitted in support thereof.

[3]As a result, Sasaki's motion to correct the filing date of the FAC, Dkt. No. 25, is DENIED AS MOOT.

113 pages.[4]   These 113 pages contain 743 paragraphs of factual allegations[5] and what appear to be at least 7 causes of action.[6]   In addition to this reading feast, there are approximately 2,845 pages of evidentiary material–almost the entirety of which consists of grievances Sasaki filed while a prisoner–submitted in apparent support of the FAC.

Since the FAC, Sasaki's filings have continued.   On December 13, 2018, in addition to seeking to amend the filing date of the FAC, Sasaki sought to alter the caption of the case.   *See* Dkt. No. 25.   Next, Sasaki moved for clarification of an order from the U.S. Magistrate Judge assigned to this case, for this Court to provide him records from numerous other cases in which he was a litigant, and for judicial notice that he had sought habeas relief in a criminal case in the U.S. District Court for the Northern District of Ohio.   Dkt. No. 26.   Sasaki then moved to amend the FAC to add claims under the Federal Tort Claims Act (FTCA) against the United States.   Next, Sasaki moved to correct the FAC again, this time

---

[4]The FAC has, subsequently, increased by at least an additional page, given that Sasaki has informed that the final page of the FAC was missing when originally filed.   *See* Dkt. No. 29. Sasaki has also, subsequently, attempted to amend the FAC to add claims under the Federal Tort Claims Act.   It is unclear how many additional pages these claims could add, given that Sasaki has not actually pled those claims yet.   *See* Dkt. No. 27.

[5]Seven hundred and forty-three does not do justice to the number of paragraphs of factual allegations within the FAC, given that at least one paragraph spans 17 pages and contains roughly 6 sub-paragraphs and 174 sub-sub paragraphs.   *See* FAC at ¶ 89.

[6]Seven is likely a gross underestimation, given that each cause of action appears to include numerous claims.

to add a page that was omitted when it was originally filed. Dkt. No. 29. At the same time, in response to an Order from this Court, Sasaki filed an amended application to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 29-1. Sasaki then filed a motion in which he appears to seek to "clarify[]" his prior filings, as well as submit an amended financial affidavit and material in support of his FTCA claims. Dkt. No. 31. Finally, on February 19, 2019, Sasaki filed an appeal of the Magistrate Judge's scheduling order, moved for appointment of "standby" counsel, and again moved the Court to take judicial notice of his habeas case. Dkt. Nos. 34-36.

Because Sasaki has shown an inability to pay the filing fee in this case or provide security therefor, the Court GRANTS the IFP Application. However, because the FAC does not come close to providing a short and plain statement of Sasaki's claims, the FAC is DISMISSED WITH LEAVE TO AMEND. In light of this ruling, Sasaki's requests in the various other motions pending before the Court are, for the most part, DENIED or DENIED AS MOOT, as set forth herein.

## I.     Sasaki's IFP Application

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that demonstrates an inability to pay. *See* 28 U.S.C. § 1915(a)(1). While

Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948), the applicant must nonetheless show that he is "unable to pay such fees or give security therefor," 28 U.S.C. § 1915(a).

In the IFP Application, Dkt. Nos. 29-1, 31-1, Sasaki states that, for the past year, his gross and take-home pay have been $0. He states that he receives about $388 per month in disability payments and food stamps. Sasaki further states that he has $700 in a checking or savings account and does not own any other thing of value. Sasaki states that he has regular monthly expenses of $350 for "[m]aintenance" and $100 for utilities. Sasaki asserts that, according to the Internal Revenue Service, he owes $80,000, and, according to the State of New York, he owes $20,000, with interest accruing. Sasaki also asserts that he owes various individuals and/or entities for items such as back rent and printing costs.

In light of Sasaki's assertions in the IFP Application, the Court finds that he has shown an inability to pay the $400 filing fee while still affording the necessities of life. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). In addition, on the present record, Sasaki has insufficient assets to provide security. As a result, the Court GRANTS Sasaki leave to proceed *in forma pauperis*.

## II.    Screening of Sasaki's Complaint

The Court subjects each civil action commenced pursuant to 28 U.S.C.

§ 1915(a) to mandatory screening and can order the dismissal of any claims it finds

"frivolous, malicious, failing to state a claim upon which relief may be granted, or

seeking monetary relief from a defendant immune from such relief."   28 U.S.C.

§ 1915(e)(2)(B).   In doing so, the Court liberally construes a pro se complaint.

*Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).   However, the Court

cannot act as counsel for a pro se litigant or supply the essential elements of a

claim.   *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of

Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### A.    Federal Rule of Civil Procedure 8(a)

There is no easy way to briefly summarize the FAC's factual allegations or

the claims raised therein.   The majority of the factual allegations revolve around

an untold number of grievances Sasaki filed while incarcerated in numerous

federal institutions, the treatment of those grievances at various levels of

administrative review, and the purported consequences flowing from the alleged

treatment.   Sasaki appears to assert that the grievances discussed in the FAC are

but a small subset of the totality of grievances he filed while incarcerated.

The FAC's focus on the long history of Sasaki's many grievances is misplaced. A rejected grievance alone does not make a claim in federal court because, while a prisoner may have a right to file prison grievances, *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009), prisoners are not entitled to any particular grievance or administrative appeal system, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). The same is true of the FAC's allegations that numerous Bureau of Prisons (BOP) policies were violated or not followed in processing Sasaki's grievances. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). While some part of Sasaki's vast history of grievances may become relevant to the extent an issue of exhaustion arises with respect to any of Sasaki's claims, exhaustion is not currently before the Court. As this Court explained in its prior Order, exhaustion is an affirmative defense, and Sasaki is not required to allege it in any complaint he may file. *See* Dkt. No. 11 at 3 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).[7]

Instead, at this juncture, to the extent grievances are relevant, it is to the extent they pertain to an independent constitutional injury. For example, if one or

---

[7]As the Court further explained in its prior Order, exhaustion can be assessed at screening if the defense appears on the face of a complaint. *See* Dkt. No. 11 at 3. Here, however, given the almost constant reference in the FAC to an untold number of grievances, rejections, appeals, further rejections, further appeals, and/or still further rejections, it is impossible to determine whether any one of Sasaki's large number of claims is exhausted or unexhausted. As such, the Court has no intention of attempting to reach such conclusions independently.

more prison officials retaliated against Sasaki for filing grievances, potentially, that could represent a federal claim, if (among other things) all of the elements of such a claim were plausibly alleged.  *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005) (setting forth the elements of a First Amendment retaliation claim).   In trying to determine whether the FAC alleges any legitimate federal claims, though, the FAC collapses under the sheer weight of the allegations pertaining to the history of Sasaki's many grievances.   Put another way, there are simply far too many irrelevant factual allegations obscuring what may, possibly, be relevant and material factual information.

The foregoing is just one general problem with the FAC.   Additional problems will be discussed below.   But the foregoing is reason alone to dismiss the FAC because Sasaki has failed to state his claims in a short and plain manner, as Rule 8(a) of the Federal Rules of Civil Procedure requires.   Fed.R.Civ.P. 8(a)(2).   Notably, each of Sasaki's claims rely upon a 92-page, 743-paragraph section of factual allegations most of which are irrelevant or repetitive and drown out the potentially relevant allegations that may exist.   Moreover, because the description of Sasaki's claims is divorced from where the underlying factual allegations can be found, it is almost impossible to determine which factual

allegations pertain to which claim or claims.    Attempting to make a connection between a claim and the facts supporting it should not be a matter of guesswork; rather, as Rule 8(a) requires, it should be something that appears plainly and in a short fashion in a complaint.    In addition, although Sasaki is proceeding pro se, he must still follow, *inter alia*, the Federal Rules of Civil Procedure.   *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896, 925, 928 (9th Cir. 2012).    Therefore, on Rule 8(a) grounds, the FAC is subject to dismissal.

## B.    Venue

One of the reasons that the FAC is perhaps of such great length is because, in one pleading, Sasaki attempts to assert claims against individuals working at multiple federal prisons, in regional or central prison administrative offices, and in a residential reentry program.[8]    Identifying the alleged claims against all of these

---

[8]More specifically, the FAC seeks relief from at least 66 named and unnamed defendants. These 66 defendants fit into at least eight separate groups.    The first group includes 21 named and an unknown number of unnamed defendants working at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu Defendants").    The next group consists of 21 named and an unknown number of unnamed defendants working at the Federal Satellite Low in Elkton, Ohio ("the FSL Ohio Defendants").    The next group is made up of nine named and an unknown number of unnamed defendants working at the Federal Correctional Institution in Fort Dix, New Jersey ("the FCI New Jersey Defendants").    The next group is one named and an unknown number of unnamed defendants working at the Federal Transfer Center in Oklahoma City, Oklahoma ("the FTC Oklahoma Defendants").    The next group includes two named defendants working at the BOP Central Office in Washington, D.C. ("the BOP Central Office Defendants"). The next group consists of two named and an unknown number of unnamed defendants working at BOP Regional Offices in Pennsylvania and California ("the BOP Regional Defendants").

defendants is far from a straightforward task. This is largely because, although Sasaki nominally titles what appear to be seven causes of action and makes a series of conclusory statements, such as "deliberate indifference," and general factual assertions, such as "seizures and strip searches," he principally relies on 92 pages of factual allegations in the FAC for each claim. Sasaki makes no attempt, though, to connect any specific factual allegations to any specific claim. Instead, one must essentially decipher the 92 pages of factual allegations to discern the *actual* claims Sasaki is attempting to bring in this case.

When one does so, and does so liberally, it reveals an unsurprising fact: the vast majority of the discrete misconduct alleged in the FAC took place outside of Hawaii. There is an obvious reason why. Of the more than four years that the alleged events in the FAC span, Sasaki spent only about eight months in Hawaii. The remainder of Sasaki's time, and the alleged events that befell him, was spent in New Jersey, Oklahoma, and Ohio. Some examples include: prison officials in Ohio and New Jersey depriving him of property; prison officials in Ohio and New

---

The next group is one named defendant working at the Oriana Halfway House ("OHH") somewhere in Ohio and what appears to be the corporate parent of OHH ("the OHH Ohio Defendants"). The final group is two named defendants who work as residential reentry managers ("RRM") in Cincinnati, Ohio ("the RRM Ohio Defendants"). The Court further notes that, at the end of this section of the FAC, Sasaki suggests that there are a vast number of additional potential defendants in this case, some of whom he has identified, but, whether they will be named at some later date as defendants will be dependent upon discovery.

Jersey retaliating against Sasaki for filing grievances; prison officials in Ohio and New Jersey interfering with his legal mail; prison officials in Ohio assaulting Sasaki; prison officials in New Jersey allowing Sasaki to drink water that was known to be toxic; and individuals at a halfway house in Ohio delaying Sasaki's medical care after an assault.

Ordinarily, therefore, venue would not be proper with respect to the claims of discrete misconduct allegedly committed by the defendants other than the FDC Honolulu Defendants.[9] *See* 28 U.S.C. § 1391(b)(2) (providing that venue is proper in a judicial district in which a "substantial part of the events or omissions giving rise to the claim occurred"). Sasaki attempts to avoid this result, though, by tying together all of the far-flung defendants with claims of conspiracy. Although it is not obvious why, Sasaki appears to believe that a substantial portion of the alleged conspiracy took place in Hawaii. However, even putting aside whether or not a substantial portion of the alleged conspiracy took place in Hawaii, that is no basis for the claims of discrete misconduct occurring in places other than Hawaii to remain pending before this Court.[10] Instead, venue in Hawaii is

---

[9]By "claims of discrete misconduct," the Court means *all* of the claims alleged in the FAC *other than* the claims of conspiracy, which are discussed below.

[10]In that regard, although the Ninth Circuit does not appear to have addressed the principle, some district courts in this Circuit have applied a "pendent venue" principle to claims for which venue is lacking. Essentially, under this principle, if there is venue over one claim, a court can find "pendent venue" over claims for which venue would ordinarily be lacking if the latter claims are

improper with respect to *all* of the *non*-conspiracy claims alleged in the FAC, whether they be premised on *Bivens*, the Racketeer Influenced and Corrupt Organizations Act (RICO), the FTCA,[11] or any other statute or law, relating to *any* defendant *other than* the FDC Honolulu Defendants.

As for Sasaki's conspiracy claims, it is impossible for the Court to assess whether a substantial portion of the events giving rise to the alleged conspiracy claims took place in Hawaii.   All the Court can say, at this juncture, is that it is skeptical that they did for reasons including the disproportionate amount of time Sasaki spent in places other than Hawaii, and the temporal order in which Hawaii entered the picture relative to those other places.   Nevertheless, for present purposes, the Court does not find that venue is improper with respect to the conspiracy claims.

## C.   <u>Transfer</u>

When venue is improper, a district court must dismiss the improper claims or, if it is "in the interest of justice," transfer the claims to any court in which the

---

"closely related" to the former.   *See e.g.*, *United Truck & Equip., Inc. v. Curry Supply Co.*, 2008 WL 4811368, at *11 n.4 (D. Ariz. Nov. 5, 2008).   Even where the principle is applied, though, it is a purely discretionary decision.   *Zumba Fitness, LLC v. Brage*, 2011 WL 4732812, at *2 (C.D. Cal. Oct. 6, 2011).   Here, to the extent pendent venue may be a viable principle to extend venue, this Court declines to exercise its discretion to do so over the numerous discrete acts of alleged misconduct that took place in States outside of Hawaii and with respect to which those States have far more interest in resolving.
[11]The Court addresses below Sasaki's attempt to amend the FAC to include claims under the FTCA.

claims could have been brought. *See* 28 U.S.C. § 1406(a). As discussed earlier, the Court has found that the FAC should be dismissed for violating Rule 8(a)'s command to state the claims therein in a short and plain manner. This Court, thus, does not find it to be in the interest of justice to transfer the claims of discrete misconduct against the out-of-state defendants at this juncture. *See Amity Rubberized Pen Co. v. Market Quest Group Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (explaining that, generally, transfer will be in the interest of justice "unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith."). This is especially so where, as here, excising the *actual claims* Sasaki intends to bring against each distinct group of defendants would involve a large degree of guesswork.

Instead, the Court believes that the more appropriate course is to allow Sasaki to amend the FAC. In doing so, Sasaki may allege claims against the out-of-state defendants. Assuming that Sasaki is able to file an amended complaint that complies with Rule 8(a), and it is not apparent that any claims asserted against the out-of-state defendants are otherwise frivolous, then this Court will likely transfer those claims to the appropriate district(s) in which they should have been brought.[12] To the extent Sasaki is **_not_** able to file an amended complaint that

---

[12]Alternatively, Sasaki may, of course, excise any claims asserted against the out-of-state defendants and re-file them himself in the courts in which they belong.

complies with Rule 8(a), though, he is **forewarned** that any and all claims asserted therein against the out-of-state defendants may be dismissed and not transferred.

**D.** **The FDC Honolulu Defendants**

The Court now turns to the claims of discrete misconduct alleged against the FDC Honolulu Defendants, for which venue is undoubtedly proper in the District of Hawaii. As discussed earlier, the FAC is subject to dismissal for failure to state the claims therein in a short and plain manner. This is no different for the claims against the FDC Honolulu Defendants. As with the claims against all of the other defendants named in the FAC, Sasaki fails to tie any of the alleged facts to an actual claim. Instead, Sasaki has listed a series of boilerplate assertions under the causes of action and, separately, devoted 92 pages to making factual allegations. It is up to the reader to then independently discern what claims those factual allegations fall under. Apart from not being short or plain, such a structure fails to put any of the defendants on reasonable notice of the actual claims they may have to defend against.

Nonetheless, although it is unreasonable to expect the FDC Honolulu Defendants to understand the claims asserted against them in the FAC, with much time and effort, it is possible to discern factual allegations that suggest some (if not all) of the claims Sasaki is attempting to bring. The Court first sets forth the non-

conspiracy claims that the factual allegations may suggest,[13] and then explains some of their potential deficiencies to assist Sasaki with his amendment efforts.

Against the FDC Honolulu Defendants, the FAC's factual allegations may suggest the following claims: (1) deliberate indifference in requiring Sasaki to re-file grievances for the purpose of causing pain to his injured wrist in violation of the Eighth Amendment; (2) restricting Sasaki's access to the courts in violation of the First Amendment; (3) interfering with Sasaki's legal mail in violation of the First Amendment; (4) retaliating against Sasaki for filing grievances in violation of the First Amendment; (5) refusing to provide and/or accept grievance forms in order to prevent Sasaki from filing the same in violation of the First Amendment;[14]

---

[13]The substance of Sasaki's conspiracy claims is addressed later in this Order.

[14]As already mentioned, the Court is well aware of the fact that Sasaki has submitted approximately 2,845 pages in the form of exhibits, most of which are grievances he filed while incarcerated.   It, thus, may be hard to imagine that Sasaki was *prevented* from filing grievances. Nonetheless, however implausible, the factual allegations of the FAC appear to suggest that Sasaki was so prevented, and, therefore, the Court includes the claim(s) for the sake of completeness.   The Court further notes that it is unclear whether this claim is meant to constitute a retaliation claim–*i.e.*, the FDC Honolulu Defendants retaliated against Sasaki for filing grievances by preventing him from filing more–or simply a standalone claim of a constitutional violation.   For now, the Court lists it as a standalone claim.

and (6) filing false disciplinary/incident reports against Sasaki.[15][16][17]

In listing the foregoing suggested claims, the Court does not imply that they are cognizable in this Circuit or are meritorious.   They are listed merely to illustrate and synthesize as much as is meaningfully possible the type of claims the factual allegations of the FAC appear to suggest.   Moreover, the Court does not intend to address in specific detail each or any of the foregoing claims.   As already discussed, although the Court believes those are the claims the factual allegations may suggest, the FAC fails to set forth the claims in a short or plain manner.

---

[15]It appears that Sasaki intends this claim (or claims) to be premised upon alleged retaliation for, *inter alia*, filing or trying to file grievances, rather than a due process violation.   *See* FAC at ¶¶ 277, 349, 351.

[16]Sasaki also repeatedly alleges that the FDC Honolulu Defendants improperly denied his grievances and/or improperly transferred him to another prison.   Those claims are not actionable.   *See infra* (citing *Ramirez*, 334 F.3d at 860; *Cousins*, 568 F.3d at 1070; *Mann*, 855 F.2d at 640); *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991) (holding that, when federal prison officials have discretion to move inmates from prison to prison, the due process clause "imposes few restrictions on the use of that authority, regardless of any additional motives which are claimed to exist.").   Therefore, those allegations are not further discussed herein, and, to the extent Sasaki intends to raise claims premised upon them, those claims are DISMISSED WITH PREJUDICE without leave to amend.

[17]The Court notes that, in the section of the factual allegations related to the FDC Honolulu Defendants, Sasaki also alleges that his property was thrown away by prison officials.   FAC at ¶ 256.   However, neither of the named officials are FDC Honolulu Defendants; rather, they both appear to be officials working at the Federal Satellite Low in Elkton, Ohio.   *See id.* at ¶¶ 44, 67. Later in the FAC, Sasaki alleges that one or more of the FDC Honolulu Defendants "read/disposed of," "shuffled," and "messed…up" his legal materials, but he does not allege what materials were disposed of, as opposed to read, shuffled, or messed up.   *See id.* at ¶ 357. As such, the Court cannot find that the alleged facts state a deprivation of property claim, whether such a claim would be premised upon an alleged due process violation and/or a violation of the FTCA.   This is especially so where, as here, Sasaki alleges that, prior to being incarcerated in Hawaii, his legal materials were disposed of by prison officials in New Jersey. *See id.* at ¶¶ 138-146.   To the extent Sasaki wishes, though, he may amend this claim in any amended complaint he may file in response to this Order.

However, because some or all of the claims identified above may be re-asserted in a further amended complaint, the Court makes the following observations.

    **1.**    _**Bivens**_

All of the foregoing claims involve alleged constitutional violations concerning the conditions of Sasaki's confinement.   While the Court will address the remedies Sasaki seeks in the FAC later in this Order, generally, a _federal_ prisoner bringing claims for _monetary damages_ arising from _constitutional violations_ in the conditions of his confinement can _only_ bring those claims pursuant to _Bivens v. Six Unknown Fed. Narcotics Agents_, 403 U.S. 388 (1971).

A _Bivens_ damages remedy, however, has been recognized only in _three_ contexts: (1) FBI agents handcuffing a man in his home without a warrant in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures; (2) a Congressman firing his female secretary in violation of the Fifth Amendment's Due Process Clause; and (3) prison officials failing to treat an inmate's asthma in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.   _Ziglar v. Abbasi_, 137 S.Ct. 1843, 1854-55, 1860 (2017). The Supreme Court has explained that expanding a _Bivens_ damages remedy to contexts different than those three is "disfavored."   _Id_. at 1857.

That, though, does not mean a *Bivens* claim other than those enumerated

cannot succeed.   Of course, a claim could fall within the same context as one of

the three identified above.   At the screening stage of a case, this Court will not

endeavor to determine, without the benefit of any argument from the parties,

whether any of Sasaki's potential *Bivens* claims fall into one of the three

recognized *Bivens* contexts.   All the Court will say at this juncture is that, given

the number of claims potentially suggested by the factual allegations in the FAC,

there is a more than reasonable likelihood that at least some of them will constitute

a new *Bivens* context.   If that is the case, then Sasaki will have at least one

additional hurdle to overcome in order for his *Bivens* claims to have any chance of

success.   That additional hurdle is the "special factors" analysis.   *Id*. at 1859-60.[18]

Again, at the screening stage of this case, this Court will not endeavor to

determine without the benefit of any argument from the parties whether "special

factors" counsel against extending *Bivens* to any potential new contexts Sasaki's

claims may raise.   However, to the extent Sasaki is not aware of the special factors

[18]The Court recognizes that in, *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018), the
Ninth Circuit held that there were *two* additional hurdles to overcome when a new *Bivens* context
is presented.   Specifically, the Circuit explained that the "special factors" analysis is *preceded*
by asking whether any "adequate alternative remedies" exist for protecting the prisoner's rights.
If adequate alternative remedies exist, the Circuit held that there was no need to address the
special factors analysis.   *Id*.   The Court further recognizes that roughly six months after *Vega*, a
different panel of the Ninth Circuit concluded that the existence or lack thereof of adequate
alternative remedies is subsumed in the special factors analysis.   *Lanuza v. Love*, 899 F.3d 1019,
1031 n.7 (9th Cir. 2018).

analysis, the Supreme Court has explained that it concerns "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a special factor counselling hesitation, a factor must cause a court to hesitate before answering that question in the affirmative." *Id*. at 1858-59. The Supreme Court then identified a number of special factors, including, the burden on the government and its employees in recognizing a new *Bivens* context, whether an alternative remedial structure exists to protect a party's interests, whether a new *Bivens* claim is being used to alter an entity's policy, whether recognizing a new *Bivens* context would require courts to interfere with sensitive functions of the government or inquire into sensitive issues of national security, and whether Congress' failure to provide a damages remedy is more than inadvertent. *Id*. at 1858, 1860-63. Ultimately, if some feature of a case provides reason "to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong," a court must refrain from creating such a remedy. *Id*. at 1858.

For now, the Court leaves its discussion of *Abbasi* there. Perhaps more important for the screening of any future amended complaint Sasaki may file, he will, of course, need to allege a plausible violation of his constitutional rights.

The Court, therefore, sets forth the following legal frameworks for some of the claims identified above.

With respect to claims brought under the First Amendment for violating a prisoner's right to access the courts, the Supreme Court has explained that this right is limited to providing prisoners with the tools to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (emphasis in original). Here, it appears that Sasaki challenges impediments effecting his ability to attack his criminal conviction on direct appeal. *See* FAC at ¶ 253. Sasaki also alleges impediments to his ability to contest tax disputes with the Internal Revenue Service and the State of New York. *See id.* at ¶ 256. Pursuant to *Casey*, Sasaki does not have standing to assert any such alleged injuries. *See Casey*, 518 U.S. at 349, 355.[19] The same is true for any claim that the FDC Honolulu Defendants allegedly interfered with legal mail unrelated to Sasaki's criminal sentence or challenging the conditions of his confinement. *See Rose v. Kirkman*, 301 F.

---

[19]In that regard, in one of his motions, Sasaki requests the records from "all of his cases." *See* Dkt. No. 26 at 3. That request is denied for the reasons set forth below. This includes the records being irrelevant for all of the cases identified in the motion other than perhaps Sasaki's criminal case.

App'x 722, 722 (9th Cir. Nov. 26, 2008) (citing *Casey*, 518 U.S. at 348-349). Therefore, in any future amended complaint he may file, Sasaki should **only** assert a First Amendment access-to-courts claim based upon any alleged injury he suffered in attacking his criminal sentence or challenging the conditions of his confinement.

Many of the claims that are suggested in the FAC against the FDC Honolulu Defendants appear to concern retaliation. A natural reading of those allegations suggests that the FDC Honolulu Defendants were acting in some form of a retaliatory manner against Sasaki from the moment he arrived at the prison in Hawaii until the moment he left. While it is not always straightforward to discern *why* the FDC Honolulu Defendants would allegedly act this way, it appears, at least for the most part, to have been due to Sasaki filing (or trying to file) grievances and pursuing criminal and civil litigation in the courts. The allegations, though, are, for want of a more efficient word, a mess. Not the least because they are strewn across the course of the allegations against the FDC Honolulu Defendants, with no effort to tie the alleged facts to any element of a retaliation claim. As such, so Sasaki is aware of what he must allege to state a retaliation claim (or claims), the Court will set forth the elements of such a claim.

There are five elements. *Watison*, 668 F.3d at 1114. First, Sasaki must allege that his conduct–*i.e.*, the conduct that the FDC Honolulu Defendants have allegedly retaliated against–is protected. "The filing of an inmate grievance is protected conduct." *Id.* Second, Sasaki must allege that a defendant (or defendants) took an *adverse action* against him. Third, Sasaki must allege a *causal connection* between the adverse action (element two) and his protected conduct (element one). Fourth, Sasaki must allege that the defendant's acts would "chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* (quotation omitted). Although Sasaki need not allege a chilling effect from the defendant's acts, he must still allege that he suffered some harm that was "more than minimal." *Id.* Finally, Sasaki must allege that the defendant's retaliatory acts did not advance legitimate goals of the prison. *Id.*

To be clear, to the extent Sasaki intends to bring a retaliation claim (or claims), he **must** allege **each** of the five elements set forth above for **each** retaliation claim he brings. In addition, for **each** retaliation claim, as for every claim Sasaki brings in any amended complaint, he **must** identify the **specific** defendant or defendants who allegedly committed the retaliatory acts. It is not enough for Sasaki to identify the FDC Honolulu Defendants as a group.

## 2.     State and FTCA Claims

In the FAC, Sasaki asserts a multitude of State torts against the FDC

Honolulu Defendants.   These include intentional infliction of emotional distress,

fraud, defamation, and negligence.[20]   Following the filing of the FAC, Sasaki has

also filed a "Motion to Add FTCA Action & US as a Defendant," Dkt. No. 27, and

a "Motion to Clarify Other Filings, Submit Complete Standard Form 95, & Amend

Financial Affidavit," Dkt. No. 31.   Among other things, these motions seek to add

claims under the FTCA against the United States related to the alleged conduct of

the FDC Honolulu Defendants.

Most pertinently for the Court's present analysis, in the foregoing motions,

Sasaki does not allege or otherwise state the claims he seeks to bring under the

FTCA, and he does not attach a proposed amended complaint containing any such

claims.   Instead, Sasaki appears to be under the impression that this Court will

plead his FTCA claims for him, given that Sasaki makes the less-than-helpful

suggestion in one of his motions that this Court should take example FTCA claims

---

[20]Sasaki also appears to assert a claim premised upon him purportedly being a third-party beneficiary of the FDC Honolulu Defendants' employment contracts.   Although this purported claim is placed in the "torts" section of the FAC's causes of action, it is far from clear whether the claim is meant to be one sounding in tort or contract.   Whatever may be the case, as alleged, the claim is subject to dismissal because (1) to the extent the claim sounds in tort, Sasaki has not alleged what tort has been committed or facts supporting the elements of such a tort, and (2) to the extent the claim sounds in contract, Sasaki has, at the very least, failed to allege why he should be considered a third-party beneficiary of the FDC Honolulu Defendants' employment contracts.

from the state torts asserted in the FAC.   *See* Dkt. No. 27 at 1.[21]   This Court is not Sasaki's lawyer.   It is Sasaki's barest responsibility to put words on a page and state the cause of action he wishes to bring, the legal authority for such a claim, and the facts allegedly supporting each and every element of such a claim.   The Court, thus, DENIES WITHOUT PREJUDICE Sasaki's request to add claims against the United States under the FTCA because Sasaki has failed to allege any such claims.   In filing any future amended complaint, Sasaki may allege claims under the FTCA against the United States if he so chooses.   So it is clear, though, general assertions of the United States' liability, such as those made in the above-mentioned motions, *see* Dkt. No. 27 at 2, and attaching or incorporating by reference the administrative form that Sasaki presented to the Department of Justice, *see* Dkt. No. 31-2, **will not suffice**.   As with all of the claims Sasaki may allege in an amended complaint, for **<u>each</u>** claim he seeks to bring under the FTCA, he must identify the claim he intends to bring and, under the heading for that claim, allege the facts supporting **<u>every</u>** element of such a claim.

---

[21]Perhaps the most unhelpful suggestion in the FAC comes on page 114 with Sasaki's statement that the FAC has been left in "the capable hands of the Court who should be able to ascertain RICO & other causes from his Statement of Case/Facts…."   *See* Dkt. No. 29 at 2.   To the extent it is not already abundantly clear, the purpose of a complaint is not to leave alleged facts in the Court's hands and expect the Court to divine the claims a party wants to bring.   That responsibility lies with Sasaki.

As for the State tort claims Sasaki alleges in the FAC, they are subject to dismissal. First, to the extent any or all of the actions of the FDC Honolulu Defendants occurred within the scope of their employment, the FTCA provides the *exclusive* remedy. *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996). Second, to the extent any of the actions of the FDC Honolulu Defendants did not occur in the scope of their employment, Sasaki has simply failed to allege in a proper manner any tortious conduct.[22] Therefore, in any future amended complaint, to the extent Sasaki alleges that the FDC Honolulu Defendants acted outside the scope of their employment, he **must** allege facts supporting __each__ and __every__ element of the pertinent tort (whether intentional or negligent).[23]

E.    __The Conspiracy Claims__

In the FAC, Sasaki appears to assert two principal claims: one premised upon *Bivens* for an alleged conspiracy to violate his constitutional rights; and one premised upon RICO for an alleged conspiracy to violate that statute. Both conspiracy claims appear to concern *all* of the defendants. In other words, Sasaki appears to allege nationwide conspiracies involving dozens of individuals from

---

[22]For example, simply stating: "Fraud/deceit: All ARPs, IRs (incident reports or 'shots'), & transfers," does not allege a plausible claim of fraud.
[23]For example, using the same tort referenced in the preceding footnote, in Hawaii, the elements of fraud are (1) a false representation, (2) with knowledge of its falsity, (3) in contemplation of plaintiff's reliance upon the false representation, and (4) plaintiff's reliance. *Hawaii's Thousand Friends v. Anderson*, 768 P.2d 1293, 1301 (Haw. 1989).

officers working in different prisons to administrators overseeing prisoner grievances.

Aside from the venue issues that were discussed earlier, the factual allegations supporting these alleged conspiracy claims, like most of Sasaki's claims, are strewn across the 110 plus pages of the FAC.   In any future amended complaint Sasaki may file, he will need to allege these conspiracy claims in a far more coherent, short, and plain manner or face dismissal of the claims for violating Rule 8.

> 1. ***Bivens***

Starting with the *Bivens* conspiracy claim, "a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (quotation and internal quotation omitted).   "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage."   *Id*. (quotation and alteration omitted).   "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."   *Id*. at 1302 (quotation omitted).

In the FAC, Sasaki appears to allege that the defendants conspired to restrict his access to the courts and, perhaps, conspired in their deliberate indifference to his serious medical needs.[24]   Among many other allegations related to these claims in the FAC, Sasaki alleges that every single named defendant either directly confessed their involvement in the alleged conspiracies and their objective of violating Sasaki's constitutional rights, or was implicated by another defendant's direct confession.   Sasaki alleges that the defendants told him directly, many times in "private[]" conversations, of their agreement and its objectives.   *See, e.g.*, FAC at ¶ 460.   At this juncture, the Court need not assess whether, if true, these allegations state a plausible *Bivens* conspiracy claim.   Nonetheless, at present, the allegations pertaining to Sasaki's conspiracy claims are scattered throughout the FAC, and, as such, are not short or plain and do not provide fair notice to any of the defendants of the nature or factual content of the claims.

In any future amended complaint Sasaki may file, he **must** allege **each** conspiracy claim **separately** in a short and plain fashion by alleging the facts supporting such claim under a heading for each separate claim.   Sasaki **cannot**

---

[24]Sasaki also appears to allege that the defendants conspired to deny his grievances on improper grounds.   As discussed earlier, however, a prisoner does not enjoy a constitutional right to any particular grievance system or to have his grievances denied or granted in any particular fashion, proper or otherwise.   As a result, any conspiracy claim premised upon the denial of Sasaki's grievances is not actionable because the claim does not state an agreement to violate a constitutional right.   *See Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

simply allege facts throughout a complaint, some of which relate to an apparent

conspiracy, label elsewhere a cause of action as a *Bivens* conspiracy, and then say,

"as described in this complaint," as he does in the FAC.   Put simply, as for **all** of

the claims Sasaki intends to bring, **each** claim must have its **own separate**

**heading** and the alleged facts supporting the claim **must** be placed under that

heading.[25]

### 2.    RICO

As for RICO, it is unlawful for any person to conspire to violate one of its

substantive provisions.   18 U.S.C. § 1962(d).   "A conspirator must intend to

further an endeavor which, if completed, would satisfy all of the elements of a

substantive criminal offense, but it suffices that he adopt the goal of furthering or

facilitating the criminal endeavor."   *Salinas v. United States*, 522 U.S. 52, 65

(1997).   The predominant elements of a substantive RICO offense under Section

1962(c) are (1) conduct (2) of an enterprise (3) through a pattern of racketeering

activity.   *Id*. at 62; 18 U.S.C. § 1962(c).   A "pattern of racketeering activity"

requires at least two acts of racketeering activity.   18 U.S.C. § 1961(5).[26]

---

[25]The Court further notes that, like any *Bivens* claim, Sasaki's *Bivens* conspiracy claim(s), at
some point during this case, will most likely have to undergo the inquiry required by *Ziglar* as to
whether a *Bivens* remedy is available for the claim.
[26]The Court notes that, at least as to the FDC Honolulu Defendants, it is less than clear whether
Sasaki intends to raise solely a RICO conspiracy claim against all of the FDC Honolulu
Defendants or, in addition, a standalone claim (or claims) of a substantive RICO offense against

In addition, RICO provides a cause of action for a civil litigant "injured in his business or property by reason of a violation of section 1962…." *Id.* § 1964(c). "To prevail, a plaintiff must prove that the defendant's unlawful conduct was not only a 'but for' cause of his injury but also the 'proximate cause' of the injury…." *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019) (citation omitted). "Proximate cause requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quotation omitted).

In the FAC, Sasaki appears to allege that the defendants engaged in wire and/or mail fraud as part of their conspiracy.[2728] Wire and mail fraud are acts of racketeering activity under RICO. *Id.* § 1961(1). "Wire or mail fraud consists of

---

[27]specific FDC Honolulu Defendants. To the extent that Sasaki files an amended complaint, he **must** state whether he is bringing the latter. If he is, he **must** identify the specific FDC Honolulu Defendant who allegedly committed the offense **and** set forth the facts supporting **each** alleged offense under a **separate** claim. Sasaki **must** do the same for the out-of-state defendants, to the extent he believes one or more of them committed a substantive RICO offense, so that the Court can properly evaluate such claims and/or transfer them to the appropriate district.

[27]The FAC appears to describe the defendants' alleged wire/mail fraud as the "primary [r]acket" with respect to their RICO conspiracy. The Court acknowledges that the FAC also lists other purported acts of racketeering activity, such as "Kidnapping/Extortion/Robbery/Theft/Exaction." However, as far as the Court is concerned, the allegations in the FAC neither support any such acts of racketeering activity nor suggest that any of these acts were for the purpose of furthering the defendants' purported criminal endeavor. As such, the Court confines its analysis solely to the alleged acts of wire/mail fraud.

[28]The Court further notes that, although Sasaki's *Bivens* conspiracy claim is premised upon alleged violations of his constitutional rights, no such purported violation of his constitutional rights will support a RICO conspiracy claim. *See Bowen v. Olstead*, 125 F.3d 800, 806 (9th Cir. 1997) (explaining that civil rights violations "do not fall within the statutory definition of 'racketeering activity.'")

the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 9(b), in alleging wire or mail fraud, a plaintiff "'must state with particularity the circumstances constituting fraud,'" while intent may be alleged generally. *Id*. at 558 (quoting Fed.R.Civ.P. 9(b)). In practical terms, this means that a plaintiff must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id*. (quotation omitted).

In the FAC, it appears that the alleged wire/mail fraud was carried out by the defendants, among other things, "repeatedly" making false representations in issuing Sasaki disciplinary reports and denying Sasaki's grievances. The FAC alleges that these false representations were "electronically sent to the SENTRY server," which is described as "essentially an email," and mailed or faxed to him and others. Whether, if true, such a purported scheme could be a considered a "scheme to defraud" for purposes of the mail or wire fraud statutes is doubtful. At this juncture, however, even if the Court were willing to assume that the

defendants' conduct could be considered an actionable scheme, there are still many pleading deficiencies with Sasaki's claim.

First, it is far from clear whom the defendants were attempting to defraud. It certainly was not Sasaki. If one thing is clear from the FAC, it is that Sasaki believed that the defendants were issuing him false disciplinary reports and rejecting his grievances on false grounds *from the moment* that those alleged acts occurred. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006) (explaining that factual statements in a letter could not amount to mail fraud "where the sender knows the recipient will not be deceived by the falsehoods."). There is a mountain of grievances attached to the FAC stating so. If the defendants were that transparent in terms of what they were collectively doing and why, it appears implausible that they could have been engaged in fraud, least of all directed at Sasaki.

Second, although Sasaki identifies the type of communications the defendants allegedly sent (*i.e.,* disciplinary reports and rejections of grievances) and, on occasion, identifies specific communications, *see, e.g.*, FAC at ¶¶ 312, 316, 542, 544, on almost (if not every) occasion, Sasaki either alludes to a grievance contained in the hundreds of pages attached to the FAC or otherwise fails to identify the time and place of the false representations, *see id*. This is simply

insufficient under Rule 9(b).   The Court acknowledges that Sasaki may have taken this pleading tack due to the vast number of grievances he filed and his apparent attendant belief that *every single one* was denied on a false ground.   The sheer number of falsehoods that Sasaki believes were directed toward him, though, provides no reason to absolve him of the requirements for pleading fraud in federal court.   Therefore, so it is clear, in any future amended complaint he may file, Sasaki **must** allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation," for **every** representation that he alleges was false.   *See Sanford*, 625 F.3d at 558. Simply stating something along the lines of: "see the exhibits attached to the amended complaint," **will not suffice**.   Should Sasaki fail to satisfy Rule 9(b) with respect to any representation, the Court must disregard the same.   *See id.*[29]

## F.   Remedies

Finally, in screening the FAC, the Court turns to the remedies Sasaki seeks. Generally, Sasaki seeks (1) numerous forms of injunctive relief, (2) numerous forms of declaratory relief, and (3) monetary damages in excess of $1 billion.

---

[29]Of course, in pleading fraud, Sasaki need not rely on every single grievance that he believes was falsely rejected.   As explained, "racketeering activity" only requires **two** acts of racketeering.   This would include just two acts of alleged wire or mail fraud.

As for Sasaki's requests for injunctive and declaratory relief, they are moot because he has been released from prison. *See Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012).[30]   As for monetary damages, at this juncture in the case, it is impossible to know to what (if any) monetary damages Sasaki may be entitled. He may certainly seek monetary damages under *Bivens*, RICO, and the FTCA.

However, because it is mentioned in the FAC and in other motions Sasaki has filed, the Court is compelled to make one thing clear: **This** litigation **cannot** be used as a vehicle for Sasaki to challenge his criminal conviction in the United States District Court for the Northern District of Ohio.[31]   That is prohibited under Supreme Court precedent.   Specifically, in *Heck v. Humphrey*, 512 U.S. 477, 487-487 (1994), the Supreme Court held that, in order for a plaintiff to recover damages for an allegedly unconstitutional conviction or imprisonment, "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must prove that the conviction or sentence has been, *inter*

---

[30]Sasaki appears to also rely upon RICO as a basis for injunctive relief.   However, as he appears to acknowledge, *see* Dkt. No. 29 at 2, such relief is not available in the Ninth Circuit.   *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1088 (9th Cir. 1986).

[31]Notably, in the FAC, Sasaki asserts: "And now Dr. Sasaki has to spend the time/money [to] successfully sue the prison to get a chance (honest services lost) to show the Sixth Circuit, that the prison was actually responsible for his apparent non-compliance with the order & FRAP." FAC at ¶ 233.   Equally telling, in a motion filed after the FAC, Sasaki states: "Flailing about in the realm of law, [Sasaki] is an indigent, non-attorney trying to overturn his wrongful conviction by finally getting his direct criminal appeal looked at on its merits.   To prove to the Sixth Circuit that his apparent non-compliance with their order & the FRAP was not his fault, [Sasaki] filed this suit, the only way he knows how to right that wrong."   Dkt. No. 31 at 3.

*alia*, reversed on direct appeal or called into question by the issuance of a writ of habeas corpus.

Here, it appears that one of Sasaki's principal contentions is that, due to the actions of numerous defendants, his ability to litigate the direct appeal of his criminal conviction was hindered and/or prevented. Specifically, Sasaki appears to allege that his direct appeal was dismissed because some of the defendants prevented him from complying with orders from the court of appeals.[32] However, in light of the allegations of the FAC, as well as statements in other motions Sasaki has filed, it is evident that Sasaki's criminal conviction has not been overturned. As Sasaki acknowledges, his direct appeal was dismissed. *See* FAC at ¶¶ 232-233. Moreover, as Sasaki states in a motion filed on December 31, 2018, he has recently filed a habeas motion to vacate his conviction and sentence. *See* Dkt. No. 26. In other words, he is still presently pursuing avenues to challenge his conviction.

Thus, at best, with respect to any damages resulting from the alleged invalidity of his conviction, the Court would likely abstain from or stay the pertinent claims during the pendency of Sasaki's collateral challenge. *See Heck*,

---

[32]It is perhaps relevant to note that, at some point in Sasaki's direct appeal, Sasaki moved to have the third court-appointed counsel for his direct appeal removed, and this request was ultimately granted, resulting in Sasaki representing himself. *See United States v. Sasaki*, Case No. 14-3448, Dkt. Nos. 68-1, 76-2 (6th Cir.).

51 U.S. at 487 n.8.   Put another way, although the precise calculation of Sasaki's requests for $100 million in compensatory damages and $1 billion in punitive damages is unclear at this point, to the extent either of those requests depend upon damages resulting from the alleged invalidity of his criminal conviction, Sasaki will not be able to obtain those damages in **this** litigation until and unless his conviction is overturned.   And, to repeat, the criminal conviction **cannot** be overturned in this litigation.

## III.   Sasaki's Motions

As mentioned earlier, since filing the FAC, Sasaki has filed numerous motions requesting various forms of relief.   To the extent those requests have not already been addressed herein, the Court does so in summary fashion below.

In a "Motion to Clarify Other Filings, Submit Complete Standard Form 95, & Amend Financial Affidavit," Dkt. No. 31, Sasaki provides a summary of the various requests he has made across his motions.   As such, the Court starts with that summary.

1.      Sasaki's request for the oversized FAC and attached exhibits to be accepted, Dkt. Nos. 22 & 31, is DENIED for the reasons set forth herein.

2.     Sasaki's requests for his claims under the FTCA and the United States as a defendant to be added, Dkt. Nos. 27 & 31, are DENIED WITHOUT PREJUDICE for the reasons set forth herein.   As discussed, to the extent Sasaki wishes to include these claims and the United States as a defendant in any future amended complaint he may file, he **must** allege the claims separately in such a complaint and provide factual allegations supporting **each** and **every** element of the alleged claims.

3.     Sasaki's requests to modify the caption of the case and to change the filing date of the FAC to November 16, 2018, Dkt. Nos. 25 & 31, are DENIED AS MOOT.   As explained, the Court deems the FAC as having been timely filed on November 16, 2018.   As for modification of the caption, it is moot in light of the dismissal of the FAC.

4.     Sasaki's request to allow discovery before finalizing the named defendants or "determining RICO action," Dkt. Nos. 22 & 31, is DENIED WITHOUT PREJUDICE.   To the extent Sasaki is unaware of the identity of any unnamed defendant, he should name said individual as a Jane or John Doe defendant in any future amended complaint he may file in response to this Order.   To the extent Sasaki

believes otherwise, this Court has **never** instructed him to eliminate a potential defendant from this case for purposes of "compromise" or to "reduce the burden on the government." Whether or not Sasaki will be allowed discovery to learn the identity of any unnamed defendant will depend on the legal sufficiency of any relevant alleged claim. The same is true of any RICO claim Sasaki may wish to bring.

5. Sasaki's request to direct the defendants, as well as the United States, to preserve all potential evidence, Dkt. Nos. 27 & 31, is DENIED WITHOUT PREJUDICE. None of the defendants have been served in this action, and the United States has still not been named in any pleading. Moreover, Sasaki has presented no evidence that the Court need *remind* the defendants of any potential document preservation rules with which they need to abide.

6. Sasaki's request to have "someone" provide him with the records and files from all of his cases, Dkt. Nos. 26 & 31, is DENIED. To be clear, Sasaki's request that *this Court* provide him with the records in his cases from around the country is untenable given that this Court and its staff are not printing presses for a litigant's benefit. Moreover, as discussed herein, other than perhaps litigation related to

Sasaki's conviction or conditions of confinement, the records from his cases are irrelevant to this action.

7. Sasaki's request for court officers to serve the FAC, Dkt. Nos. 26 & 31, is DENIED AS MOOT. So it is clear, assuming that Sasaki files an amended complaint that survives screening, pursuant to Fed.R.Civ.P. 4(c)(3), the Court will order the U.S. marshal to serve any such complaint. Sasaki will not be required to do so on his own. That being said, as with any other litigant proceeding *in forma pauperis*, Sasaki will be required to assist the U.S. marshal in serving any relevant defendant(s), which includes providing the U.S. marshal with last known address information for a defendant.

8. Sasaki's request to have "standby counsel" appointed, Dkt. Nos. 26, 27, 31, 34, 35, is DENIED for the reasons set forth throughout the record. *See* Dkt. Nos. 9, 16, 18, 21. Because Sasaki has now made at least half a dozen different requests for counsel or standby counsel, even though this case has not yet proceeded beyond screening and was initiated less than a year ago, the Court makes the following very clear. Sasaki's repeated requests for counsel appear to be premised upon a misunderstanding, not only of his rights, but also of how

appointment of counsel is sought in a civil proceeding. First, **there is no constitutional right to counsel in a civil case, such as this one**. *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996). Second, even if this Court was, at some later point in this case, convinced of the need for Sasaki to be represented by counsel, the Court cannot guarantee that any counsel will represent Sasaki. This is because, unlike in the criminal context where a panel of attorneys exists, each of whom may be *required* to represent an indigent defendant, in the civil context, there is no requirement that a panel attorney represent an indigent litigant if selected to do so. Instead, a selected attorney has ten days to accept or decline appointment. *See* Rule 3(D) of the Rules of Civil Pro Bono Panel for the U.S. Dist. Ct. of Haw. (providing that an attorney selected may accept or decline appointment within ten days of notice). Finally, even if the Court was convinced of the need for Sasaki to be represented by counsel, under no circumstances would this Court seek "standby counsel" from the civil pro bono panel. "Standby" counsel is a creature of the criminal world. There is no such thing in the civil context. So it is clear, should the Court seek counsel to represent Sasaki later in this

matter, and should any counsel agree to do so, that counsel will be the **only** individual allowed to submit filings in this case and will be in charge of litigating this case going forward.

9. Sasaki's requests to take judicial notice of the filing of his 28 U.S.C. § 2255 motion ("Section 2255 Motion") in the U.S. District Court for the Northern District of Ohio, Dkt. Nos. 26, 31, 36, are GRANTED. However, to repeat, Sasaki **cannot** obtain damages in this case for any injuries he allegedly incurred due to the invalidity of his criminal conviction until and unless that conviction is overturned. In addition, the conviction **cannot** be overturned (or even the merits of it litigated) in this case.

Apart from the foregoing, Sasaki appears to make the following additional requests in the various motions he has filed.

10. Sasaki's request to have the 114th page added to the FAC, Dkt. No. 29, is GRANTED.

11. Sasaki's request to amend his IFP Application, Dkt. No. 31, is GRANTED.

12. Sasaki's appeal of the Scheduling Order, Dkt. No. 34, is DENIED AS MOOT. In light of the rejection of the FAC, and the Court allowing

Sasaki leave to amend the same, any deadlines set forth in the

Scheduling Order will necessarily change.

Finally, the Court makes the following observation based upon its review of

Sasaki's motions.   In some of the motions, Sasaki appears to suggest that this

Court is acting in a manner disadvantageous to him.   Specifically, Sasaki

questions why he was instructed to fill out his complaint on a prisoner complaint

form, but, subsequently, instructed to fill out a non-prisoner *in forma pauperis*

application.   *See* Dkt. Nos. 31 at 2, 34 at 2.   The answer is seemingly obvious.

*At the time* the Court instructed him to use the prisoner complaint form, Sasaki was

in a halfway house under a term of imprisonment.   The *prisoner* complaint form is

**designed** to facilitate a litigant's assertion of claims including, as here, those based

on the conditions of confinement.   In other words, the Court instructed Sasaki to

fill out the *prisoner* complaint form because that form is meant to **assist** him in

bringing his claims, not because the Court intended to disadvantage him in some

way.   As for the non-prisoner *in forma pauperis* application, pursuant to 28 U.S.C.

§ 1915(b)(1), a prisoner who brings a civil action–like Sasaki was at the time of his

initial filing–is **required** to pay the full amount of the filing fee irrespective of his

indigency.   A prisoner, though, may make partial payments toward this obligation

from his prisoner account.   Once Sasaki left the halfway house at which he was

placed, he no longer had a prisoner account.   Therefore, it was impossible for him to comply with Section 1915(b)(1) as that provision is written.   This, however, does not simply absolve Sasaki of his obligation to pay the filing fee.   Instead, at the very least, he must show that, following his release, he remains unable to pay the filing fee or give security therefor.   *See DeBlasio v. Gilmore*, 315 F.3d 396, 399 (4th Cir. 2003).   He has now done so to the satisfaction of the Court.   That is why Sasaki was instructed to fill out the non-prisoner *in forma pauperis* application and that reason alone.

## IV.   <u>Leave to Amend</u>

For the reasons set forth above, it is necessary for Sasaki to amend his complaint in this case.   As discussed, the principal problem with the FAC, from the perspective of allowing this case to proceed beyond screening, is the complete failure to abide by Rule 8(a)'s requirement of alleging a claim in a short and plain manner.   As written, the FAC is nearly unintelligible, incoherent, repetitive, and impossible to follow.   Under "Causes of Action," the FAC makes conclusory assertions and cites to 92 pages of factual allegations.   In no way can any defendant discern what cause of action pertains to him or her and what factual allegations pertain to a particular cause of action.   **The Court will not allow any**

**complaint to proceed beyond screening, and may dismiss this case, if the same deficiencies occur going forward.**

At the risk of redundancy, but so it is clear, if Sasaki files a second amended complaint, **for each claim**, he must write short, plain statements telling the Court: (1) the constitutional or statutory right he believes was violated; (2) the name of the defendant(s) who violated that right; (3) exactly what each defendant did or failed to do in allegedly violating that right; and (4) what specific injury he suffered because of the defendant's or defendants' conduct. **Sasaki must repeat this process for each right and each person or entity that he names as a defendant.** Moreover, each claim should be separately numbered. If Sasaki fails to affirmatively link the conduct of each defendant with the specific injury he suffered, the pertinent claim will be dismissed for failure to state a claim.

In addition, Sasaki may not incorporate any part of the FAC in a second amended complaint. Therefore, to the extent any claims from the FAC are not re-alleged in a second amended complaint, those claims may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled).

In addition, in light of the thousands of pages of mostly prison grievances Sasaki attached to the FAC, the Court makes the following clear. Sasaki may **not** attach **any** grievances to a second amended complaint he may file. To the extent Sasaki believes that his grievances are relevant to his claims, he **must** incorporate whatever it is that he believes is relevant **into** the second amended complaint. This, however, is no reason for the length of the complaint to increase because, at this point in proceedings, the content and administrative history of Sasaki's grievances is irrelevant.[33]

## V.    **Conclusion**

For the reasons set forth herein, the Court makes the following rulings:

1. The First Amended Complaint, Dkt. No. 23, is DISMISSED WITH PREJUDICE IN PART and WITHOUT PREJUDICE IN PART WITH LEAVE TO AMEND.

   a. The FAC is DISMISSED WITH PREJUDICE with respect to any claims that a defendant or defendants improperly denied a grievance or improperly transferred Sasaki; and

---

[33]For example, Sasaki's repeated allegation that he was retaliated against for filing grievances. The content of those grievances, whether they were improperly denied, and whether they were properly reviewed on appeal, are all entirely irrelevant to a retaliation claim. *See Rhodes*, 408 F.3d at 568.

b.  The FAC is DISMISSED WITHOUT PREJUDICE and WITH

    LEAVE TO AMEND with respect to all other claims.

2.  The "Motion to Accompany Complaint for Violation of Civil Rights,

    RICO, & Conspiracies (Prisoner Complaint)" and "Request to File

    Oversized Complaint & Leave to Amend Defendants after Discovery,"

    Dkt. No. 22, is DENIED IN PART and DENIED WITHOUT

    PREJUDICE IN PART.

3.  The "Motion to Correct the Filing Date of the First Amended Complaint

    & Caption of the Case," Dkt. No. 25, is DENIED AS MOOT.

4.  The "Motion to Clarify Order, Requesting the Record, & Take Judicial

    Notice," Dkt. No. 26, is DENIED IN PART, DENIED AS MOOT IN

    PART, and GRANTED IN PART.

5.  The "Motion to Add FTCA Action and US as a Defendant," Dkt. No. 27,

    is DENIED IN PART and DENIED WITHOUT PREJUDICE IN PART.

6.  The "Motion to Correct Filing of Complaint & Financial Affidavit," Dkt.

    No. 29, is GRANTED.

7.  The "Motion to Clarify Other Filings, Submit Complete Standard Form

    95, & Amend Financial Affidavit," Dkt. No. 31, is DENIED IN PART,

DENIED AS MOOT IN PART, DENIED WITHOUT PREJUDICE IN

PART, and GRANTED IN PART.

8. The "Appeal of Magistrate's Scheduling Order & Standby Counsel

Request," Dkt. Nos. 34-35, is DENIED IN PART and DENIED AS

MOOT IN PART.

9. The "Motion to Take Judicial Notice pursuant to Fed Rules of Evid 201,"

Dkt. No. 36, is GRANTED to the extent that the Court takes judicial

notice of the filing of the Section 2255 Motion.

10. Sasaki's application to proceed *in forma pauperis*, Dkt. Nos. 29-1, 31-1,

is GRANTED.

The Clerk of Court is directed to send Sasaki a copy of the prisoner civil

rights complaint form.   In light of the discussion earlier on this matter, Sasaki may

elect to use the prisoner civil rights complaint form sent to him by the Clerk of

Court <u>or</u> he may elect to submit his complaint in a written document other than the

prisoner civil rights complaint form.   The prisoner civil rights complaint form is

being provided to him for his convenience should he choose to use it.   In whatever

written document Sasaki elects to submit his complaint, though, he **<u>must</u>** follow

the instructions and rulings in this Order, as well as the Local Rules and the

Federal Rules of Civil Procedure.

Sasaki may have until **April 12, 2019** to file a second amended complaint consistent with the terms of this Order. **The Court cautions Sasaki that failure to file a second amended complaint by April 12, 2019 may result in the dismissal of this case.**

IT IS SO ORDERED.

Dated: February 25, 2019 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

*Terence Sasaki v. Mark S. Inch, et al.;* Civil No. 18-00270 DKW-KJM;
**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; (2) DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND; AND (3) RULING ON VARIOUS MOTIONS FOR RELIEF**