IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| TERENCE SASAKI,<br><br>    Plaintiff,<br><br>  v.<br><br>MARK S. INCH, *et al.*,<br><br>    Defendants. | Case No. 18-cv-00270-DKW-KJM<br><br>**ORDER (1) DISMISSING SECOND AMENDED COMPLAINT; AND (2) GRANTING MOTION REQUESTING ANOTHER CHANCE.**[1] |

On February 25, 2019, this Court entered an Order ("the February 25 Order") containing clear instructions for Sasaki to follow so that a pleading could be filed in this case that would survive screening. Among the many deficiencies identified in the February 25 Order, the Court informed Sasaki that his first amended complaint (FAC) did not allege facts or state claims in a short or plain fashion, in violation of Federal Rule of Civil Procedure 8(a). Instead, the factual allegations and causes of action in the FAC were lengthy and impossible to follow. To illustrate, in part, the FAC was at least 114 pages long and contained 92 pages of factual allegations.

---

[1]Pursuant to Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

On April 30, 2019, Sasaki filed a second amended complaint (SAC). The SAC is 225 pages long[2] and contains 114 pages of factual allegations. Evidently, the SAC is no shorter than its previous iteration. Moreover, the allegations and claims in the SAC are no plainer than they were in the FAC, despite the Court's clear instructions in the February 25 Order. The SAC is, therefore, subject to dismissal for at least one of the same reasons as the FAC–the failure to satisfy Rule 8(a)'s requirement for claims to be made in a short and plain fashion. This Court need go no further in reviewing the SAC, especially given that the February 25 Order clearly identified the many other deficiencies with Sasaki's allegations.

Nonetheless, because the Court is prepared to allow one further opportunity for a complaint to be filed that satisfies the most basic of pleading rules, Sasaki's motion "requesting another chance," Dkt. No. 44, is GRANTED to the extent that he may file a third amended complaint in this case. **Sasaki is forewarned, however, that he will not receive another opportunity to file an amended complaint if his next one contains the same deficiencies as its predecessors.**

## RELEVANT PROCEDURAL BACKGROUND

Much of the procedural background to-date in this case is set forth in the February 25 Order, and the Court will not repeat it herein except where it is relevant.

---

[2]There are 221 pages numbered in the SAC, but there are also 4 pages in the SAC that are not numbered, producing the overall number of 225.

Instead, the Court picks up here with the clear instructions provided in the February

25 Order, Dkt. No. 37.[3]

First, as explained above, Sasaki was instructed to file an amended complaint

that set forth his claims in a short and plain manner, as required by Rule 8(a),

because the FAC failed to do so.   The following sentence from the February 25

Order is particularly apt:   "Notably, each of Sasaki's claims rely upon a 92-page,

743-paragraph section of factual allegations most of which are irrelevant or

repetitive and drown out the potentially relevant allegations that may exist."   The

Court provided Sasaki with leave to cure this deficiency, providing him with further

clear instructions on how to accomplish the task.   Specifically, the Court instructed

Sasaki as follows:

> At the risk of redundancy, but so it is clear, if Sasaki files a second
> amended complaint, **for each claim**, he must write short, plain
> statements telling the Court: (1) the constitutional or statutory right he
> believes was violated; (2) the name of the defendant(s) who violated
> that right; (3) exactly what each defendant did or failed to do in
> allegedly violating that right; and (4) what specific injury he suffered
> because of the defendant's or defendants' conduct.   **Sasaki must
> repeat this process for each right and each person or entity that he
> names as a defendant.**   Moreover, each claim should be separately
> numbered.   If Sasaki fails to affirmatively link the conduct of each
> defendant with the specific injury he suffered, the pertinent claim will
> be dismissed for failure to state a claim.

Dkt. No. 37 at 43 (emphasis in original).

---

[3]Capitalized terms not defined in this Order have the same meaning given to them in the February
25 Order.

Next, Sasaki was notified of the venue deficiencies with respect to the vast majority of the claims asserted in the FAC. To cut a very long story short, in essence, in the FAC, Sasaki appeared to allege claims (1) concerning a nationwide conspiracy involving numerous levels of officials in the Bureau of Prisons (BOP), and (2) concerning discrete misconduct by those same officials. As for the former, although Sasaki appeared to believe a substantial portion of the conspiracy (or conspiracies) occurred in Hawaiʻi, it was far from obvious why, given the minimal amount of time that he spent incarcerated in Hawaiʻi relative to his periods of incarceration elsewhere. As for the latter, only the claims of discrete misconduct allegedly committed by the prison officials in Hawaiʻi ("the FDC Honolulu Defendants") occurred in this jurisdiction. *None of the claims of discrete misconduct allegedly committed by the large number of prison officials outside of Hawaiʻi took place in this jurisdiction.* As a result, Sasaki was informed that venue in this Court was improper with respect to many of his discrete misconduct claims.

Next, in light of the venue deficiencies just mentioned, Sasaki was notified that the claims of discrete misconduct against the out-of-state defendants would need to be dismissed or, if in the interests of justice, transferred to an appropriate court. The Court declined to take either of those actions at the time, however, in light of the fact that the FAC violated Rule 8(a) and the guesswork that would be

involved in attempting to excise the actual claims Sasaki intended to bring against the out-of-state defendants.   The Court further instructed Sasaki as follows:

> Assuming that Sasaki is able to file an amended complaint that complies with Rule 8(a), and it is not apparent that any claims asserted against the out-of-state defendants are otherwise frivolous, then this Court will likely transfer those claims to the appropriate district(s) in which they should have been brought.   To the extent Sasaki is **not** able to file an amended complaint that complies with Rule 8(a), though, he is **forewarned** that any and all claims asserted therein against the out-of-state defendants may be dismissed and not transferred.

Dkt. No. 37 at 13-14 (emphasis in original, footnote omitted).[4]

Next, the Court provided Sasaki with guidance and instructions with respect to the claims of discrete misconduct alleged against the FDC Honolulu Defendants, beyond the fact that those claims violated Rule 8(a).   Initially, the Court informed Sasaki that all of the claims of discrete misconduct that might be discernible from the FAC were ones that could only be brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and that it was likely those claims (given their apparent number) would require additional analysis before they could have any chance of success.

The Court then provided Sasaki with the legal framework for some of his possible claims of discrete misconduct, including his claims under the First Amendment asserting a right to access the courts and his claims for retaliation.   As

---

[4]The Court's footnote informed Sasaki that he could, of course, "excise any claims asserted against the out-of-state defendants and re-file them himself in the courts in which they belong."   Dkt. No. 37 at 13 n.12.   Sasaki may, of course, still do so.

for the former, the Court notified Sasaki that his claims should be limited to attacking any criminal sentence he may have received or the conditions of his confinement.   As for the latter, the Court instructed as follows:

> To be clear, to the extent Sasaki intends to bring a retaliation claim (or claims), he **must** allege **each** of the five elements set forth above for **each** retaliation claim he brings.   In addition, for **each** retaliation claim, as for every claim Sasaki brings in any amended complaint, he **must** identify the **specific** defendant or defendants who allegedly committed the retaliatory acts.   It is not enough for Sasaki to identify the FDC Honolulu Defendants as a group.

Dkt. No. 37 at 22 (emphasis in original).

The Court also explained that Sasaki's repeated allegations that the FDC Honolulu Defendants improperly denied his grievances and/or improperly transferred him to another prison were not actionable.   The Court, thus, clearly stated that any such claims were dismissed with prejudice and without leave to re-allege the same in the SAC.

Next, the Court provided guidance and instructions with respect to claims Sasaki appeared to assert related to the alleged commission of State torts and claims Sasaki requested leave to add (but had not alleged) under the Federal Tort Claims Act (FTCA).   As for the former, among other things, the Court notified Sasaki that, to the extent any or all of the allegedly tortious actions occurred within the scope of the FDC Honolulu Defendants' employment, the FTCA was the exclusive remedy. As for the FTCA, the Court observed that Sasaki had not actually alleged any claims

under the statute.  Instead, it appeared that Sasaki wanted this Court to do that for

him.  The Court, obviously, was unprepared to do so, and instructed as follows:

> In filing any future amended complaint, Sasaki may allege claims
> under the FTCA against the United States if he so chooses.  So it is
> clear, though, general assertions of the United States' liability, such as
> those made in the above-mentioned motions, *see* Dkt. No. 27 at 2, and
> attaching or incorporating by reference the administrative form that
> Sasaki presented to the Department of Justice, *see* Dkt. No. 31-2, **will
> not suffice**.  As with all of the claims Sasaki may allege in an amended
> complaint, for **each** claim he seeks to bring under the FTCA, he must
> identify the claim he intends to bring and, under the heading for that
> claim, allege the facts supporting **every** element of such a claim.

Dkt. No. 37 at 24 (emphasis in original).

Next, the Court addressed the claims of conspiracy in the FAC, which,

principally, appeared to be brought under *Bivens* and the Racketeer Influenced and

Corrupt Organizations Act (RICO).  As for *Bivens* conspiracy, the Court observed

that the underlying factual allegations were scattered throughout the FAC, and

instructed as follows:

> In any future amended complaint Sasaki may file, he **must** allege
> **each** conspiracy claim **separately** in a short and plain fashion by
> alleging the facts supporting such claim under a heading for each
> separate claim.  Sasaki **cannot** simply allege facts throughout a
> complaint, some of which relate to an apparent conspiracy, label
> elsewhere a cause of action as a *Bivens* conspiracy, and then say, "as
> described in this complaint," as he does in the FAC.  Put simply, as for
> **all** of the claims Sasaki intends to bring, **each** claim must have its **own
> separate heading** and the alleged facts supporting the claim **must** be
> placed under that heading.

Dkt. No. 37 at 27-28 (emphasis in original, footnote omitted). The Court also noted that Sasaki appeared to allege that all of the defendants conspired to deny his grievances on improper grounds. The Court, again, explained to Sasaki that any such claim was not actionable.

As for RICO conspiracy, the Court observed that the claim appeared to be premised upon numerous acts of mail and/or wire fraud related to the denial of Sasaki's grievances and/or disciplinary reports issued against him. However, it was unclear whom the defendants were attempting to defraud. In addition, on almost (if not) every occasion, Sasaki alluded to a grievance contained within hundreds of pages of grievances attached to the FAC. As such, the Court instructed as follows:

> The sheer number of falsehoods that Sasaki believes were directed toward him, though, provides no reason to absolve him of the requirements for pleading fraud in federal court. Therefore, so it is clear, in any future amended complaint he may file, Sasaki **must** allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation," for **every** representation that he alleges was false.

Dkt. No. 37 at 32 (emphasis in original, citation omitted). The Court also explained that no alleged violation of Sasaki's constitutional rights could support a claim under RICO.

Next, the Court turned to the remedies Sasaki sought in the FAC. As for injunctive or declaratory relief, the Court explained that any such remedies were

moot because Sasaki had been released from prison. As for monetary relief, in light of statements Sasaki had made in various parts of the record, the Court explained that this case could not be used as a vehicle to challenge his federal criminal conviction in Ohio. The Court further explained that, to the extent any part of the more than $1 billion in damages Sasaki sought depended upon damages resulting from his allegedly invalid criminal conviction, he would not be able to obtain those damages in this litigation unless his conviction was overturned, which it had not been.

Finally, the Court notified Sasaki that, if the deficiencies outlined above occurred going forward, no complaint would be allowed to proceed beyond screening, and this case may be dismissed.

## RELEVANT LEGAL PRINCIPLES

The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In doing so, the Court liberally construes a pro se complaint. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant or supply the essential elements of a claim. *Pliler*

*v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In relevant part, Rule 8(a) provides that "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed.R.Civ.P. 8(a)(2). In addition, Rule 8(d) provides that "[e]ach allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(d)(1).

## DISCUSSION

### I. The SAC

As mentioned at the beginning of this Order, the SAC is 225 pages in length. Although that represents an excessively high number, the page length does not by itself paint a complete picture. First, the SAC contains a "Statement of Facts" section that is 114 pages long and, according to the SAC, applies equally to every single one of the causes of action. There are 1,096 numbered paragraphs in the statement of facts section. There are, of course, far more paragraphs in the statement of facts than simply 1,096, given that, after paragraph 45 of the statement of facts (on page 10 of the SAC), Sasaki dispenses with numerical order and, in large part, with numbers at all for the next 33 pages, picking up with paragraph 46 on page 43 of the SAC. The only additional thing that the Court notes about this interlude in sequential numbering is that every paragraph in the pages between 10 and 43 of the

SAC appears to be irrelevant. Second, the SAC contains a "Causes of Action" section that is 95 pages long. There are 50 causes of action.[5] There are, of course, far more causes of action than merely 50, given that many appear to have sub-claims within them.[6] In addition, the causes of action section largely dispenses with the numbering of paragraphs that, mostly, takes place in the statement of facts.[7] Third, while the statement of facts and causes of action sections, evidently, take up the vast majority of the SAC's total length, there is still room for three pages listing the relief Sasaki seeks, a page listing Sasaki's injuries, and four and a half pages listing the seventy-two named defendants.[8] Finally, the SAC entirely ignores any effort to comply with the formatting rules in this District's Local Rules. Local Rule 10.2(a) provides, among other things, that all documents presented for filing shall have one-inch margins, be in 14-point font, and be double-spaced. The most obvious violation in the SAC is the failure to double-space *any* of the 225 pages. While converting single-spaced lines into double-spaced ones would not likely result in a complete doubling of page length, the SAC would certainly be *far* longer if Sasaki had complied with Local Rule 10.2(a).

---

[5]The numbering of the causes of action in the SAC goes up to 49, but there are two "Count 13's" in the SAC, *see* Dkt. No. 43 at 205, 208, thus, producing 50.

[6]For example, the first "Count 13" appears to have 23 sub-claims, *see* Dkt. No. 43 at 205, 207.

[7]The Court notes that the numbering sequence that left off at number 1,096 does re-emerge in the causes of action section momentarily, but disappears again soon thereafter after reaching number 1,104. *See* Dkt. No. 43 at 130-134.

[8]As with the FAC, the SAC also appears to envisage a potential horde of additional, currently unnamed, defendants potentially being added to this case at some point in the future.

Little else needs to be said about the SAC. It is an abject attempt to comply with the most basic of the Federal Rules of Civil Procedure–the need for a short and plain statement showing the entitlement to relief. While the meaning of "short" may not always be perfectly understood in certain contexts, there is no need to consult a dictionary to know that the statements in the SAC concerning why Sasaki is allegedly entitled to relief are not short. Moreover, as the Court explained, repeatedly, in the February 25 Order, the length of the statements is one of the reasons why they are also not plain. Simply put, there is nothing plain about having to, essentially, construct a jigsaw puzzle or walk through a maze in order to come to some realization as to why and against whom Sasaki believes he is entitled to relief.

Even worse, it is not as if Sasaki did not know that the SAC would not survive review by this Court. On the first page of the SAC, Sasaki acknowledges that it is "essentially still in draft form…." As will be discussed further below in addressing Sasaki's motion for "another chance," this is entirely unacceptable.

As far as the Court is concerned, the February 25 Order provides Sasaki with all of the guidance and instructions he needs in order to submit a complaint that complies with Rule 8. The Court therefore does not intend to give much additional instruction. Nonetheless, given that Sasaki appears to have a misunderstanding as to what "short and plain" means, the Court offers the following additional guidance from the Ninth Circuit Court of Appeals.

In *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996),[9] the Ninth Circuit explained that Rule 8 contemplates simple and brief statements, using the example of a standard negligence complaint.[10]  Such statements set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  *Id*. That is all Rule 8 requires.  Such statements are entirely absent, though, from the SAC.  Instead, the SAC is replete with, among other things, arguments, explanations as to why Sasaki is adding (or not adding) statements to the SAC, and "disclaimers."  As the Ninth Circuit further explained, a complaint such as the SAC is unfair to both litigants and judges:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges.  As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what. Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected.

---

[9]At the time of *McHenry*, the Federal Rules contained official forms as examples of the "simplicity and brevity" the rules contemplate.  *McHenry*, 84 F.3d at 1177.  Although those forms have now been removed from the Federal Rules, similar forms can be found on this Court's website and the website for the Administrative Office of the U.S. Courts.  Sasaki may wish to consult those forms for further guidance.

[10]In pertinent part, that example was: "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff, who was then crossing said highway." "As a result plaintiff was thrown down and had his leg broken, and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind, and incurred expenses for medical attention and hospitalization…."  *McHenry*, 84 F.3d at 1177.  As the Ninth Circuit explained, the foregoing statements–the ones contemplated by Rule 8–are "dramatically" short and plain.  *Id*.

…

> The judge wastes half a day in chambers preparing the 'short and plain statement' which Rule 8 obligated plaintiffs to submit. He then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case[s] who follow the rules, as well as defendants in the case in which the prolix pleading is filed.

*Id*. at 1179-80.

Nothing but such confusion would be produced in this case if the Court permitted the SAC to proceed as the operative pleading, reason enough for why the SAC will not be performing that role.

Further, the Court notes that many of the allegations in the SAC revolve around alleged fraud committed by most (if not all) of the named defendants. As explained in the February 25 Order, allegations of fraud are subject to Rule 9(b)'s heightened pleading standard. That, however, is no excuse for the SAC's length. *Id*. at 1178 ("A heightened pleading standard is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity."). Put another way, although, in the fraud context, a plaintiff must allege the time, place, and specific content of false representations, those allegations should still be short and plain.

Furthermore, as also explained in the February 25 Order, the effect of a pleading as long as the SAC is to drown out any potentially relevant and meritorious allegations that may exist. The existence of a potentially meritorious allegation in

the sea of a 225-page complaint, though, is no reason for the Court to allow Sasaki to ignore Rule 8(a)'s requirements. *Id*. at 1179 ("The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit. The magistrate was able to identify a few possible claims which were not, on their face, subject to being dismissed under Rule 12(b)(6). Rule 8[(d)], requiring each averment of a pleading to be "simple, concise, and direct," applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)."). Put simply, while Sasaki may very well believe that some or all of his claims have merit, if he is unable to comply with Rule 8 going forward, this case will be dismissed.

The Court will not spend any further time on this matter. The SAC is simply too long and complex, making a mockery of Rule 8's requirements. As a result, the SAC is DISMISSED for violating Rule 8 and for failing to comply with the February 25 Order.

## II.    <u>Sasaki's Motion for "Another Chance"</u>

At the same time as filing the SAC, Sasaki also filed a motion "requesting another chance," Dkt. No. 44, which the Court construes as a motion for leave to file a third amended complaint ("the motion"). As mentioned earlier, the motion appears to be Sasaki's acknowledgement that the SAC is a woefully inadequate pleading, something that was evidently known to Sasaki at the time he filed said

pleading. For the reasons discussed above, Sasaki's suspicions about the SAC were not misplaced. However, because Sasaki's suspicions in the motion do not appear to mirror what is actually wrong with the SAC, the Court will address the motion more fully below.

In the motion, Sasaki asserts that "[t]hings just take a lot longer for him" due to "his condition," but he has been at a library "every day it is open, six days per week, from opening to closing, seven hour[s] per day, working." Sasaki states that he "hope[s] the Court will agree that there has been a good progression from his original Complaint to [the SAC and] that he has headed in the right direction." Sasaki further asserts that "it is difficult to figure out what the Court will believe is adequate [and] relevant." He subsequently asks a series of questions, presumably directed to the Court, which appear to concern his claims under RICO. Sasaki then appears to provide an explanation for why he attached hundreds of pages of grievances to the FAC. Sasaki further states that he is "befuddled" by a statement in the February 25 Order. Sasaki then states that he "spent most of his energy on" explaining why this case implicates RICO and constitutes a *Bivens* conspiracy. Sasaki further states that he was "especially confused" by being told not to be repetitive, but also being told to assert facts for each separate claim. Sasaki asserts that all of the claims he has brought share "almost 90%" of the alleged facts, which "would certainly result in a >1,000 page plus Complaint (full of repetition)…."

Sasaki states that "[t]he only reason" the SAC is "not as clear as it could be is because he ran out of time [and] not because he cannot (or does not want to) adequately plead [his claims] if given another chance to amend."   Sasaki finishes by asking for "a little more guidance regarding what [he] as an uneducated pro se litigant perceives as competing orders (order to not lengthen/repeat [and] order to separate facts)…."

The Court will try to unpack as much of the foregoing as possible.   First, Sasaki repeatedly states in the motion (and the SAC) that he ran out of time in drafting the SAC and/or he should have been given more time.   That is simply ridiculous.   This case was initiated on July 9, 2018, over *ten months ago*.   Sasaki has, therefore, had more than enough time to draft a sufficient complaint in this case, both presumably before and certainly since its inception.   The fact that the Court will provide Sasaki with even more time after the entry of this Order does not minimize the significant time he has already been provided.

Second, this leads to another concern with the assertions in the motion: that Sasaki's unidentified medical condition prevents him from working any faster and that, if left to his own devices, the complaint could be in excess of 1,000 pages. When this case began more than ten months ago, Sasaki filed a 27-page complaint. Dkt. No. 1.   After requesting and being granted leave to amend the initial complaint, Sasaki filed the FAC, which was at least 114 pages in length.   As

discussed, the SAC is 225 pages long.   Put simply, contrary to Sasaki's assertion that there "has been a good progression" in this case, in terms of length, the filed pleadings have headed very much in the *wrong* direction.   Sasaki's use of his medical condition, therefore, is no excuse, where, if anything, he is exacerbating his purported condition by filing such overly long pleadings.[11]

Third, as for Sasaki's questions concerning his RICO claims, as has already been explained, the Court is not Sasaki's lawyer.   Moreover, the February 25 Order provides clear guidance to Sasaki regarding his claims under RICO.   He should read that guidance carefully when preparing any future amended complaint he may file.   Fourth, Sasaki explains why he attached hundreds of pages of exhibits to the FAC.   The Court has little to no concern as to *why* Sasaki attached the amount of paperwork he did to the FAC.   As with the explanations he provides in the SAC for other conduct or allegations he has taken or made, they are irrelevant.   A complaint should not contain explanations for why a litigant has made (or not made) certain allegations.   Equally, a complaint should not have attached over two thousand pages of exhibits, the purpose of which appears to have been to have the Court review the same to determine whether a claim of fraud was sufficiently alleged in

---

[11]As for Sasaki's 1,000-page contention, the Court obviously need only say that it is preposterous. Dictionaries and encyclopedias are of that length, not short and plain statements of a litigant's claims.

each one.   The *complaint* is the place for Sasaki to make factual allegations, not exhibits attached thereto.

Fifth, Sasaki asserts that he is "befuddled" by statements in the February 25 Order.   The February 25 Order is clear, and the Court will not revisit it in this Order. For the avoidance of doubt, however, in filing any amended complaint in response to this Order, Sasaki should follow all of the instructions and carefully read all of the guidance provided in the February 25 Order, including the guidance and instructions summarized above in the "Background" section of this Order.

Finally, Sasaki requests "a little more guidance" on what he believes are conflicting instructions to not lengthen his pleading but to also allege facts to support each claim.   Those instructions are **not** in conflict.   The only way that they could be in conflict is, if by alleging facts in support of each claim, Sasaki fails to follow Rule 8(a)'s requirement for short and plain statements.   But the failure to follow Rule 8(a) does not create a conflict in the Court's instructions, it merely creates a violation of Rule 8(a).   Ultimately, it is Sasaki's responsibility to follow Rule 8(a).   Put another way, the Court will not ignore the requirements of the Federal Rules merely so Sasaki can allege irrelevant, lengthy, and confusing facts in support of his claims, irrespective of whether Sasaki believes that "90%" of the facts apply equally to each claim.   If that is the case, Sasaki will need to allege those facts in short and plain statements (repetitively or not) or this case will be dismissed.

### III. **Conclusion**

For the reasons set forth herein, the Second Amended Complaint, Dkt. No. 43, is DISMISSED. Sasaki's motion "requesting another chance," Dkt. No. 44, is GRANTED to the extent that he is provided LEAVE to file a third amended complaint in this case. Sasaki should follow all of the instructions provided in the February 25 Order and in this Order in preparing his third amended complaint.

Once again, the Clerk of Court is directed to send Sasaki a copy of the prisoner civil rights complaint form. As discussed in the February 25 Order, Sasaki may elect to use the prisoner civil rights complaint form sent to him by the Clerk of Court <u>or</u> he may elect to submit his complaint in a written document other than the prisoner civil rights complaint form. The prisoner civil rights complaint form is being provided to him for his convenience should he choose to use it. In whatever written document Sasaki elects to submit his complaint, he **<u>must</u>** follow the instructions and rulings in this Order and the February 25 Order, as well as the Local Rules (including Local Rule 10.2) and the Federal Rules of Civil Procedure.

Sasaki may have until **July 1, 2019** to file a third amended complaint consistent with the terms of this Order and the February 25 Order. Given the amount of time Sasaki has had to file a sufficient complaint in this case, the Court is unlikely to consider any request to extend the **July 1, 2019** deadline absent extraordinary circumstances. So it is clear, the third amended complaint should not

be in a "draft form" or other incomplete state. It must be a final and complete product. **So it is equally clear, should Sasaki fail to file a third amended complaint that complies with the terms of this Order and the February 25 Order, this case <u>will</u> be dismissed without further leave to amend.**

IT IS SO ORDERED.

Dated: May 13, 2019 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge